JOHN MANACEK (Danbury, Conn.), Claimant
vs.
GEORGE McLACHLAN HAT CO.

Superior Court          Fairfield County          File #48545

Present: Hon. FRANK P. McEVOY, Judge.

Reich & Reich                    Attorneys for the Plaintiff.

Marsh, Stoddard & Day,          Attorneys for the Defendant.

**MEMORANDUM FILED MARCH 20, 1936**          121 Conn. 541

McEVOY, J.   On September 21, 1931, a finding and award was made granting compensation to this claimant and the compensation was to commence on December 10, 1931.   The claimant was then suffering from mercurial poisoning which arose out of and in the course of his employment as a hatter.

In accordance with that award compensation was duly paid by the respondent until October 22, 1932.

About the middle of October, 1932, the attending physician discharged the claimant and concluded that the claimant was

able to return to work, but that claimant "still had symptoms of mercury poisoning."

On the next day, October 23, 1932, the claimant was taken to the Danbury Hospital suffering from paralysis of the right side of his body and he is still disabled and unable to work.

Up to this point the parties are in substantial accord.

The claimant contends that his present incapacity arises out of the original injury—mercurial poisoning.

The respondent claims that the present condition is a hemiplegia from which the claimant is suffering and that it was caused by an aneurysm sustained as a result of a congenital defect in one of the vessel walls of the brain and that it was not caused by mercurial poisoning.

The parties are also in accord as to the actual existence of hemiplegia (paralysis of one side of the body).

The contention between the parties grows out of a conflict between and among the medical witnesses as to the cause of the paralysis.

Upon the appeal to this Court a motion was made to correct the Commissioner's second supplemental finding and award.

The Commissioner granted so much of the motion as was included in the respondent's Paragraphs 1, 7b, 7c and 7g.

It would seem that the subject matter referred to in the other paragraphs of the motion was properly included in the finding and that the remaining parts of the motion of the respondent to correct the finding were properly denied.

As to the third paragraph of the motion in which the respondent moves that all of paragraph 8 of the finding be stricken out except the first two sentences—it should be observed that the evidence certified by the respondent would seem to sustain paragraph 3 of the motion to correct.

The Commissioner has certified all of the evidence.

It may be that, technically, upon the motion to correct only the abstracts of evidence certified are properly under consideration.

However that may be, yet it remains that upon the whole issue as to whether or not the conclusion of the Commissioner was justified, the whole evidence is properly before this Court.

An examination of the transcript of evidence discloses that, in addition to general statements from which the subject matter of these sentences of paragraph 8 of the finding might be inferred, that there is also a direct statement as follows:

"I did very recently find in a very old edition of **Anders,** a mention of the fact that hemiplegia does occur in a case of chronic mercurial poison . . . ."

(Testimony of Dr. Stahl, transcript page 5.)

It may be that the respondent, in paragraph 3 of its motion, makes a distinction between hemiplegia and general paralysis, but, assuming this to be so, the testimony just quoted, taken in connection with inferences which might reasonably be drawn upon all of the other evidence would seem sufficient to warrant the denial of paragraph 3 of the motion.

The refusal of the Commissioner to grant that portion of the motion embraced in paragraph 3 of the motion which is directed to the fourth sentence of paragraph 8 of the finding would seem to be warranted by the testimony of Dr, German which is to be found on page 52 of the transcript.

Upon the various hearings before the Commissioner the claimant offered the evidence of two doctors. The respondent offered the evidence of three doctors.

One of the witnesses who testified in behalf of the claimant, Dr. Stahl, had attended and observed the claimant over a long period of time.

He testified that, in his opinion, the hemiplegia (paralysis) was probebly due to mercury and that "I felt that way in view of the fact that everything else has been eliminated." And further "on the other hand, the man has nothing else about his physical condition to cause a hemiplegia."

Record page 5.

The other witness for the claimant, Dr. Brown, stated it to be his conclusion that, from his examination of the claim-ant, and his own experience with mercury, that the hemiplegia

from which the claimant is suffering is due to mercurial poisoning.

Record pages 37-38-39-45.

One of the witnesses for the respondent, Dr. German, testified that in his opinion, the cause of the present condition of the claimant was not mercurial poisoning but that "the most probable cause was a congenital aneurysm, and congenital weakness of the blood vessel walls." In the cross-examination of Dr. German he was asked the following question:

"Q. Dr. Fox testified for the employer that he would say he did not believe it was reasonably probable that the hemiplegia was caused by mercury, but he stated it was possible it was, am I to understand that is your state of mind concerning it? A. That is essentially my state of mind.

"Q. It is possible, but you doubt the probability? A. I have been unable to find any record of such a case; I cannot say it is impossible."

Another witness for the respondent, Dr. Graves, concluded that the "most probable cause of the hemiplegia was a congenital defect in one of the vessel walls of the brain."

A third witness for the respondent, Dr. Fox, testified amongst other evidence, "In my opinion the cerebral thrombosis was not due to the mercurial poisoning which the patient previously suffered."

(Record page 15.)

And further on the same witness testified as follows:

"I cannot state absolutely that there was no causal relation to the preceding mercury poisoning. I feel it is improbable, in view of the fact I could not find any evidence it ever occurred. I could not say it was impossible they might be related because this man definitely had mercury poisoning prior to this happening."

And again:

"Q. Is it fair to state that there are cases of cerebral thrombosis where the medical profession has not as yet progressed to the point where they can definitely attribute the cause of it? A. That is right, and even when autopsy is

obtained, it is not always obvious just what caused the clot or rupture."

(Record page 17.)

And again:

"Q. You are not willing to say very positively that Mr. Manacek's present disability is not due to mercury? A. I am not willing to say that positively, no.

"Q. You recognize there is a possibility it may be? A. I would describe it as a possibility."

(Record page 19.)

The main claim of the respondent seems to be that the present disability and incapacity of the claimant was caused by and is due to a congenital aneurysm.

This phase of the case was investigated at great length by the medical witnesses who appeared on each side.

The record discloses that there was a distinct conflict of opinion and that the whole situation was, evidently, as puzzling to the medical experts as it was to the Commissioner.

It was, nevertheless, neither the right nor the duty of the Commissioner to substitute his own diagnosis or prognosis for that of the medical witnesses.

"This determination is often exceedingly difficult to make. Discrimination and sound judgment are indispensable to right decisions. Necessarily the decision is often controlled by the conclusion reached by medical experts. That opinion, if relied upon by the Commissioner or trier, must be found to be an honest one, and one which the rational mind would reasonably reach upon the established facts."

**Madore vs. New Departure Manufacturing Company, 104 Conn. 709 at 713.**

There is nothing in the record which would indicate to this Court that the opinion of the witnesses were not honest opinions.

The conclusion of the Commissioner is one which might reasonably be reached upon the claimed established facts.

Paraphrasing the language of our Supreme Court in **Tipp-**

man vs. State, 119 Conn. 1 at page 4, "the difficulty with this claim, as applied to the present case, is that the question was really one of fact."

The finding and award of the Commissioner are sustained.

Judgment may be entered accordingly.